UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

UNITED STATES OF AMERICA . Criminal No. 1:13cr419

vs. . Alexandria, Virginia
. January 24, 2014
MARK STUART LANDERSMAN, . 9:56 a.m.
also known as Mark Stuart,

Defendant.

. . . . . . . . . . .

TRANSCRIPT OF MOTIONS HEARING
BEFORE THE HONORABLE LEONIE M. BRINKEMA
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT: MORRIS R. PARKER, JR., AUSA
PATRICIA M. HAYNES, AUSA
KAREN L. TAYLOR, AUSA
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314

FOR THE DEFENDANT: JOHN K. ZWERLING, ESQ.
CARY J. CITRONBERG, ESQ.
The Law Offices of John Kenneth Zwerling, P.C.
114 North Alfred Street
Alexandria, VA 22314

OFFICIAL COURT REPORTER: ANNELIESE J. THOMSON, RDR, CRR
U.S. District Court, Fifth Floor
401 Courthouse Square
Alexandria, VA 22314
(703)299-8595

(Pages 1 - 20)

COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

P R O C E E D I N G S

(Defendant not present.)

THE CLERK: Criminal Case 13-419, United States of America v. Mark Stuart Landersman. Would counsel please note their appearances for the record.

MR. PARKER: Good morning, Your Honor. Morris Parker, Patricia Haynes, and Karen Taylor for the United States.

THE COURT: Good morning.

MR. ZWERLING: Good morning, Your Honor. John Zwerling and Cary Citronberg for Mr. Landersman.

THE COURT: All right, Ms. Taylor, this is your motion.

MR. ZWERLING: Your Honor, is this part of the *Farmers* hearing?

THE COURT: I'm sorry?

MR. ZWERLING: Is this part of the *Farmers* hearing?

THE COURT: Not really. We're not going to get into any details today.

MS. TAYLOR: Yes, Your Honor. My motion is essentially that the Court's order to hand over 150,000 to the defense is not based on an official finding that there is no probable cause for the seizure of the funds, and until the Court makes that determination, the government contends it's just not appropriate to be giving them 150,000 at this point.

THE COURT: Of course, you know, if I make that finding, then you're going to have to turn it all over. I was trying to compromise on this one. This case is getting murkier and murkier.

I should tell you first of all I've spoken to Judge O'Grady, and we have decided it makes sense for one judge to be hearing everything, so he is transferring the civil forfeiture case to this Court. I will be hearing everything. There's too much overlap, and if we do have to get special clearances for some of this case, if that happens, it makes sense to just have one chambers and one set of law clerks getting that clearance.

So that's what's going to happen. There'll be an order rearranging that assignment sometime within the next couple of days, but I wanted you to know that because you had pointed out that there's technically a civil proceeding going on.

I'm just about prepared now based upon what I have seen to find that the probable cause in this case, had a judicial officer of this court been apprised of all the information that has come to the Court, and you may not even know it all, from defense counsel, that there'd be enough questions that a court would not have felt comfortable issuing the warrants that were issued.

If you want me to make that finding, I will. I've

held off doing that, giving again what I think is a fair and appropriate balance of the equities here, because what the defense has done, they have dug up some very interesting and concerning issues that affect this case. At the end of the day, it may not make a difference, but it certainly is enough legitimate noise that it gives the Court great concern.

And again, the issue here is these funds are not going to the defendant; they're going to counsel. I've made that clear to, you know, Mr. Parker and his team, and I've made it clear to you, and so that's -- and I've also denied a previous motion to stay, and this is somewhat repetitive, but, I mean, if you want to come in and try to start really addressing the probable cause, I'm prepared to have that hearing sometime next week, but there are problems with holding that hearing because not everybody has access to all the information.

MS. TAYLOR: Correct, Your Honor. Yes, we -- if Your Honor wants to revisit the probable cause, certainly. We just want to be allowed the opportunity to put on our evidence to show that there is probable cause for this indictment, and until we get an opportunity to do that, we just feel that it's improper to release the funds at this point in time.

THE COURT: Let me ask -- Mr. Parker, I'm going to ask you -- and, Ms. Haynes, I address Mr. Parker because he's closest to the lectern.

MS. HAYNES: That's fine.

THE COURT: If you want to be the one answering, feel free to jump up and do it.

The defense have represented in their papers -- and I want to make sure I understand this correctly -- that they are under the impression that the equipment involved in this case has all been destroyed. Is that correct or not?

MR. PARKER: Well, Your Honor, if I may, there have been a number of assertions in pleadings based on -- I don't know who these individuals are, much of which we contend is not true, that have been made under seal, and we were questioned about it in court, and they appear in a newspaper, and some of this is classified, and quite frankly, this assertion, this most recent -- I take it the Court is --

THE COURT: Well, I'm concerned if evidence has been destroyed, that creates a real problem especially in a fraud case, because part of any fraud analysis in my view would be was the -- were the items which the government paid for what they purported to be. I think I've asked you this before.

Now, my understanding was that these devices, these silencers or whatever they are, suppressors, were delivered to a government warehouse. They were produced and delivered. Do they do what they were supposed to do?

MR. PARKER: Your Honor, no one asked for them. That's our, that's our contention. The only people -- and

again, I don't want to get into too much detail, we can approach the bench if the Court would prefer, and I would prefer that we approach the bench, because again, the last time, there was no reporter in the courtroom, but yet half the proceeding is in the newspaper, and some of it does pertain to classified information. So --

THE COURT: But, you know, I mean, when you-all went to bring this case to the grand jury, I mean, somebody in the investigative service should have alerted you that this thing was potentially going to have material that had to be handled differently. I've not seen a case like this before where a case was indicted and it turns out there was all sorts of things percolating around it that the prosecutor, the line prosecutors didn't know about.

Again, I'm not blaming you or Ms. Haynes. I think that it strikes the Court that you-all were not given the complete picture of the environment of this case.

MR. PARKER: We had no idea what individuals who were fired from the Department of Navy might say to other individuals regarding some of this information. Again, as I have stated, at least with respect to one of those individuals, we made several attempts to talk to that person, and we finally did after the case was charged, but they resisted. For whatever reason, we were unable to talk to them.

So we could not have anticipated some of the things

that have been brought up, and even in the most recent pleadings, we could not have anticipated. I would not have anticipated --

THE COURT: Well, maybe not you but the investigators, the ones on the ground. As you know, the most recent pleading is very serious in terms of --

MR. PARKER: Well, it is, but again, these are programs to which some of these investigators didn't even have access. We had to be read into these programs, so even that investigator could not have anticipated.

And, and our response to that is, quite frankly, we believe that's really, the relevance is borderline.

THE COURT: Well, the problem I have, too, is you-all want this *Farmer* hearing, another *Farmer* hearing, and I'm perfectly willing to have a full-blown hearing, a much more in-depth hearing than we had last time, but no one's in a position yet to do it. These attorneys haven't been cleared, Ms. Taylor hasn't been cleared, and, you know, again, this is a continuing delay of this case.

Mr. Landersman -- the defendant, Mr. Landersman, is, you know, under a felony -- felony charges, and the government has taken a significant amount of resources, and at the present time, the only issue before the Court today is whether or not it would be appropriate for a portion of those funds to be released, and as I said, in the old days, I know that this was

often done that when the government seized funds from a target or a defendant, there were compromises made that some of those funds were released to counsel. That certainly has been done in the past, and this case in my view calls out for that more and more because of the problems that are associated and that have been brought to attention, frankly, by work of the defense.

MR. PARKER: Well, if I may say and I'll turn it over to Ms. Taylor, those were -- those are representations made in pleadings or through -- it wasn't in the context of a hearing, and I will defer to Ms. Taylor.

MS. TAYLOR: Oh, I was just going to point out a lot of the times if it's substitute assets, we will do that, but this is direct proceeds, and with direct proceeds, we look at it differently. We can't even agree to give over direct proceeds without getting permission from the Department of Justice to do that, which is usually not forthcoming if it's direct proceeds.

THE COURT: Has your office even approached the people at Justice and given them some idea of the kinds of information the defense has been digging up and presenting to the Court?

MS. TAYLOR: No, we have not talked about what kind of information they've been digging up, but again, they haven't -- from what I've seen, and again, I'm not here on

every hearing, I don't know that they've actually presented actual evidence. They have, they have said it may be out there, but there's no actual evidence that they've presented that would actually undermine the probable cause, we submit, Your Honor.

THE COURT: Well, I think this -- we're going to probably have a trial before a trial in this case, but that might be it, but again, how long is it going to take to get people in a position where they can get access to the information they need to have access to?

MR. PARKER: Well, Your Honor, at the last hearing, I represented it would take some time, and I think it was the Court who said it takes no more than one to two weeks. I took issue with the Court's statement again because I didn't think that was a realistic time frame.

I have given the names of defense counsel and other counsel who we believe are involved in providing information to defense counsel to Ms. Gunning. I can ask Ms. Gunning -- again, I think Ms. Gunning's been in touch with the Court.

THE COURT: Well, I know the process has started.

MR. PARKER: And I'll ask Ms. Gunning for a time frame, but --

THE COURT: Well, the other issue I want addressed is is there an ATF agent who is the lead investigator on this case?

MR. PARKER: Yes, Your Honor.

THE COURT: Who is that?

MR. PARKER: Rick -- Richard Dean. I get the two -- there are two Richards in this case.

THE COURT: The issue raised in the most recent pleading by the defense about the potential conflict of interest between the investigative agencies does concern the Court and, I think, ought to at least create some concern on the part of the prosecutors to make sure that the agency that's investigating this case doesn't have any axe to grind or is not itself vulnerable to those types of charges.

Is there any reason why the ATF cannot be made the prime agency on this case and get the other agency out of it?

MR. PARKER: It would be a problem, Your Honor, because I think the, the NCIS has much of the access to the programs, etc., that are being discussed in the context of this case.

THE COURT: Well, I understand that, but the agent, the ATF agent could be read in.

MR. PARKER: Possibly, Your Honor. That will take additional time. That process will take additional time.

Moreover, we think that that's a baseless accusation. We've heard that accusation, and that was raised in the context of the badges. That has little, if anything, to do with the silencers issue.

THE COURT: All right. Let me hear from defense on this. Mr. Citronberg or Mr. Zwerling, who's going to respond?

MR. ZWERLING: Your Honor, it's my understanding that the government has already made arrangements with whoever needs to have arrangements made for the monies to be released and wired into our account as early as today.

THE COURT: I'm sorry?

MR. ZWERLING: That the government has made arrangements for the funds to be wired into our account already because the Court had given it a deadline of today, so whatever permission apparently they needed to get they got. If I'm mistaken, Ms. Taylor can correct me, but that's the information that we were given. We had to provide the wiring information and things like that.

THE COURT: All right.

MR. ZWERLING: We were told it would be there today. So I think their needing to go to DOJ or whatever was either bypassed or dealt with and --

THE COURT: Ms. Taylor, have a seat until Mr. Zwerling finishes.

MR. ZWERLING: So I may be wrong, but that was the impression that I was given. That's why we gave the wiring instructions, because otherwise, they have -- if they haven't made that, then they have just ignored your order to have it paid today in anticipating your granting a motion to

reconsider, which is a pretty unusual thing.

THE COURT: Unwise.

MR. ZWERLING: So I'm assuming that they're ready to be in compliance with the Court's order.

The -- I know if we proceed with the *Farmer* hearing and we prevail, that all of the funds will be released because that is what would be required. Our client would certainly like to see that.

We're concerned about how much work we still have to do in order to do a full *Farmer*'s hearing in preparation for what they're going to put on, whether we're going to be able to be given access in a timely fashion to all of the information, but we have evidence that we can put on to support our motions. We chose to go lightly on some of that stuff because there was no need to mention people's names if it wasn't necessary, but there are -- you know, we would want the documentation regarding the conflict of interest. There's got to be documentation that we referred to in our pleading. The government would have to get that for us.

I don't know if they made the attempt to get it, whether they were told those things don't exist, they were told NCIS wasn't deprived of any funds or didn't have their budget reduced. We don't think that's correct, but maybe that's the information they're working on.

We're in the dark, but we, we think that under *Franks*

*v. Delaware*, there was material information that was not provided to the magistrate by the government. The government is charged with the knowledge -- the prosecutors are charged with the knowledge of their agents. Their agents, for example, had interviewed Shellenbarger, had interviewed Mr. Vaughan a long time ago.

That information clearly was exculpatory, clearly undercut a lot of the conclusory things in the complaint and in the indictment that would make it seem as though no one had ever heard of this, it was solely three people in the Navy Department who concocted this thing and ordered these things.

There were discussions. They're documented. They are -- and they were reported to the investigators months before the indictment.

And so it's hard for us to understand how the government can say we're totally off base in all of our allegations. I haven't seen a pleading filed by the government that said we -- they deny at this point that there was a type of program that we mentioned in our submissions that certain types of weapons for which these suppressors were specifically made for didn't exist as part of this program, nor that they weren't destroyed subsequent to the litigation in this case, and the revelation in *The Post* on November 12 that the suppressors were going to a specific outfit that would clearly be likely to need anonymity in their weaponry, that's never

been denied in recent days since we started filing our information.

It's never been denied that somebody acknowledged that the color of the money was correct in this thing, that -- I've seen no documentation or statement of any witness saying that the information that Lee Hall gave to the government is not correct, that the, the notes that he wrote regarding the estimate from another company through a middleman of what it would cost to do these suppressors was twice what was paid for to my client for making those items, and in fact, it appears as though the government has acknowledged that that was -- oh, that was just a middleman, but that confirms that there would have been some type of documentation or notes of Mr. Hall that have been destroyed.

There's no denial that, that's evidence that NCIA or the Navy security people came in and destroyed documentation regarding the acquisition of these items. They have since, we allege, destroyed the weaponry for which the suppressors were designed.

MR. PARKER: Your Honor, I would object. These are under seal filings. Now we're going into a totally different area, and again, this is classified information.

THE COURT: All right. Well, all right, I think at this point, what we need to do is this: Ms. Taylor, is it correct that you requested from Mr. Zwerling their wire

information?

MS. TAYLOR: Yes, Your Honor. We did not want to be held in content of court by not having the money today, because the Court's order was to have it today is my understanding.

THE COURT: All right.

MS. TAYLOR: And so to be on the safe side, I would have liked to have come to court with a check, but the marshals said they don't do that anymore, they wanted to wire transfer it, and so they had to have Mr. Citronberg fill out a form for that, which I sent him on Tuesday and they did that, and so they said it takes two business days once they get the form to wire.

So that is in process. I don't know if I can just call it off or not, but I just know it's in process.

THE COURT: All right. Well, I'm going to do this: I'm not changing my order. I already denied this stay previously, and so the order stays in effect, so the monies will be transferred to defense counsel today.

I'm going to let the government sit back and think more seriously as to whether you really want a *Farmer* hearing in this case. If so, we still have this problem because the line prosecutors can't participate in that unless, quite frankly, you-all are prepared to have them. It would probably be a more seamless proceeding if they do. Quite frankly, you're putting out so much of this case ahead of time anyway,

I'm not, you know, I'm not convinced that the prosecutors being aware of that information is going to be a detriment to your ability to defend the case, but you've got to think that one through.

So both sides should think about the cost/benefit analysis of going forward with the *Farmer* hearing and/or -- yeah, anyway. But the problem, the logistical problem is we can't have a meaningful hearing without the necessary clearances going through, and that is a concern that I have. I know that Ms. Gunning's office is working vigorously to get that done, but it hasn't yet been done, and I think until we have a sense of how long that's going to take, it's almost meaningless to put this on the calendar.

So at this point, there's some relief to defense counsel in that you're getting some funding for the work you've been doing on this case, and the main concern I have, though, and I am going to ask Mr. Parker and Ms. Haynes to look into this, I want to know absolutely whether the evidence, the physical evidence, that is, these items that were -- that are at issue in the indictment, has been destroyed or if, in fact, there would still be at least one physical to come to court if we have this trial that can be either evaluated by an expert, and I just don't know. The impression I've had is that they may not still exist.

MR. PARKER: No, Your Honor, I think there's a

misunderstanding. I don't think they're contending that any of the items made and seized in this case were destroyed. Their contention goes to --

THE COURT: Other things.

MR. PARKER: Exactly. There's no contention and they have not been destroyed.

THE COURT: All right. But then are you assuring me that they, in fact, still exist?

MR. PARKER: Absolutely not, Your Honor.

MR. ZWERLING: Your Honor, we have seen them.

THE COURT: Oh, you have seen them.

MR. ZWERLING: We've been allowed to go and look at them.

THE COURT: Oh, all right.

MR. ZWERLING: And I apologize if I gave the Court the impression that the suppressors were destroyed. That was never our intent.

THE COURT: Okay. That's good. We've clarified that.

All right, so I'm denying the -- I'm not denying the motion for a *Farmer* hearing. I'm saying both sides should think about whether that really makes sense. If both sides are interested in going forward with it, then we have to get the necessary evidence lined up, and I expect this will be a significantly long proceeding, so once we know when it can be

done, then we'll put it on the calendar.

MR. ZWERLING: Thank you, Your Honor.

THE COURT: I have to leave it like that.

And I think for speedy trial purposes, again, this case is sufficiently complex that the continuation of any trial date at this point is appropriate, all right? Anything further?

MR. PARKER: No.

MR. CITRONBERG: May I?

THE COURT: Mr. Citronberg.

MR. CITRONBERG: Two very brief things. One, at the last hearing, the government had indicated that -- or the Court had raised concerns about much of the Shellenbarger ROI being redacted, and the government had represented that they would like to be able to hand that over in its entirety to us. We haven't gotten one yet. I just wanted to --

THE COURT: I thought you had -- we have one now.

MR. PARKER: We do have one, Your Honor. I said that we may very well turn it over. I did give the Court an unredacted one for the Court to review. I have not turned it over to counsel. I don't know if there's anything exculpatory. I'll look at it again and consult with Mr. --

THE COURT: Citronberg?

MR. PARKER: -- Citronberg today.

THE COURT: All right, if you're not planning to turn

over the unredacted, you need to explain to the Court why.

MR. PARKER: Okay. Certainly, Your Honor.

THE COURT: All right?

MR. CITRONBERG: And then the, the other issue is with respect to the conflict of interest motion, that again, we aren't asking the Court to rule on any issues in that except that ask the government not to destroy any of the evidence that would be related to that motion. We had a proposed order, and there's been so much destroyed in this case, we're just very nervous about that type of documentation being destroyed as well.

THE COURT: I am -- if it hasn't been done clearly enough, I will include again in today's order that there can be no destruction of any documents, e-mails, or any evidence related in any respect to the issues in this case, which include the defendant's allegations of there being some conflict between the Naval Investigative Services and other entities in the Department of the Navy.

MR. CITRONBERG: Thank you, Your Honor.

THE COURT: All right? That's all it's going to say.

And then it's your job, Mr. Parker and Ms. Haynes, to get that information to the Navy so that no one says, "Well, we didn't know about it." All right?

MR. PARKER: Yes.

THE COURT: All right, thank you. You're all free to

go.

(Which were all the proceedings had at this time.)

CERTIFICATE OF THE REPORTER

I certify that the foregoing is a correct transcript of the record of proceedings in the above-entitled matter.

/s/
Anneliese J. Thomson